Thank you, Your Honors. Good morning, counsel. Our next case this morning is Ironi v. EFI Global. Mr. Loftus. Hello. Sorry. Just a moment. I have you on the YouTube. I'm still listening to the prior argument. All right. Try it again. Mr. Loftus, you may begin. Alex Loftus for the plaintiff's appellants. This comes to the court on a 12C motion on the pleadings. It's a pretty narrow issue on interpreting a contract provision. We have here is three Israeli immigrant brothers. They built a business over 15 years and they sold that business for $7 million. The $7 million took the form of $4.2 million in cash plus $2.8 million in stock. The stock was valued at a price of $100 a share. After the sale in 2015, the business did really well and everything picked up. They increased their sales, increased their clients, and the brothers were paid out their bonuses based on this. Despite the business improving and going better, when the business was sold, the purchasing company was sold three years later, it was sold for a price of $26 a share is all that was realized. So just 25 percent of what they were paid. So the logical explanation for the 75 percent drop in value must be that when they were originally contracted three years earlier, before the business improved, $100 a share was not accurate. There was a mistake. So when the brothers were promised they were getting $7 million, that's not actually what they were receiving at the time. The issue here is that that $100 a share was not a correct number when it was originally offered. Now, how we got here is some really nifty agreements. And most of the whole case turns on this interpretation of provision for agreed value of shares. So. The question of agreed value depends take the position that this is a nominal value or par value or some other imaginary number. Now, the problem with that argument is that elsewhere in the contract, it defines that CLA shares being the preference shares have a nominal value of one cent per share. So the nominal value or the par value or whatever imaginary value is defined elsewhere as one cent. And then the agreed value is some other number which is then reused repeatedly throughout the agreement as the real value of what they received. So the real value is. The hundred dollars a share, and that is what the market value of the shares was. Now, this is important because when the deal is done and they pay taxes on the deal, it's based on this hundred dollar share value. It's not a nominal value. It's not a par value. The really nifty agreement tries to get around this by saying that the parties agreed in advance to the hundred dollar share value as an imaginary number. And they don't describe where this came from. Now, the problem with that idea that this number came out of their mutual agreement is that throughout all the transactional documents in the case, they repeatedly use a hundred dollar value. And even when they were paid out in 2017 for their bonus and the their good work on in growing the company, they were paid based on the hundred dollar value. So. It's clear here that the hundred dollars, about a hundred dollar share price was the actual value, the market value of the company and not some imaginary number. Now, everything turns on then when the ironies did the deal. Did they receive something that was worth one hundred dollars a share? Now, in order to challenge that, we bring several claims. First, we bring a rescission claim based on mistake. So the argument is that the parties came in, they were sophisticated as acknowledging the agreement. They reviewed that they reviewed the documents as to value and it demonstrated that they believed is worth one hundred dollars a share. And both sides thought it was worth one hundred dollars a share and both sides were mistaken. Now, in order to plead this mistake. Flame, there's no need to reach out beyond the agreement, the agreement that doesn't implicate the incorporation provision at all. This is simply within the terms of the agreement that the parties were mistaken as to the value. And based on that mistake that it was actually worth far less, it was worth less than 25 percent of what they claimed it was because in the three years since the transaction, the. Company did much better by any market, any measure, and then it was still sold for only 25 percent of what they claimed it was. The other basis we have. Is an argument as to equitable fraud now for equitable fraud, the primary argument against this is that we have to show some special relationship that is not the law in Delaware. We can lead equitable fraud simply based on as part of a rescission claim. So here we have a rescission claim based on a mutual mistake in the fundamental term of the agreement that they were receiving something worth one hundred dollars a share. The parties were mistaken as to that value, and that gives rise to the claim for equitable fraud. Now, what is in the agreements is that the parties mutually agreed as to this one hundred dollar share price. What is pled is that they were fraudulently representing or mistakenly representing the very least that. The stock was worth one hundred dollars a share. Now, here the purchasing company had far greater knowledge as to what the shares were worth and therefore it's it's a reasonable conclusion that this was. Done. As it was a misrepresentation on the point of part of defendants. Finally. We bring a claim for unjust enrichment. The unjust enrichment claim. Again, the primary argument against this is that you can't have both an unjust enrichment claim along with a breach of contract claim. Again, under Delaware law, that's not correct. So long as there is a claim to rescind the agreement that there is no agreement based on that, then a claim can survive for unjust enrichment. Here, what happened was a transaction occurred. If the deal is rescinded, then defendants receive a huge benefit of owning the company for these several years. During the years they own the company, they received a significant benefit based on the false promise of paying million dollars. Ultimately, what we have here is a false promise of seven million dollar purchase price. And it's knew what they were doing when they communicated seven seven million dollar purchase price. They knew it was false. It was false and are trying to enforce the agreement by relying on a very contract provision. Would you like to reserve the remainder of your time for rebuttal? Mr. Loftus, are you reserving the remainder of your time for rebuttal? Yes. Mr. Allison. May it please the court. Matthew Allison for the appellees. Judge Chang's well-reasoned opinion granting judgment here applied well-established Delaware law and should be affirmed. Indeed, just three weeks ago, a Delaware chancery court opinion in mid-cap funding be bravel confirmed that these mistakes of these claims of mistake and fraud are barred by the plain language of these parties contracts. The Aronis seek to rescind the 2015 transaction by which they sold their business to defendants for a combination of cash and restricted unlisted preferred shares in CLAH, one of the defendants. Those unregistered shares had a notational agreed issuance value of $100. Disappointed when those preferred shares were redeemed in 2018 for less than the value attributed to them in 2015, the Aronis now claim that the later sale establishes that both sides were mistaken in the original transaction and that they should get back the company they sold. But there was no mistake and no misrepresentation here. The detailed transaction documents, the purchase agreement and the subscription agreement by which they were issued their shares contain unambiguous language, detailed integration and non-reliance clauses that foreclose each of the causes of action asserted here. As the court said in progressively DuPont, the language of a contract governs when no ambiguity exists. Under the objective theory, intent does not invite a tour through the plaintiff's cranium with the plaintiff as the guide. Delaware courts have held that sophisticated parties may not reasonably rely upon representations that are inconsistent with the negotiated contract. All of the Aronis claims fail because they are premised upon the assertion that the agreed value jointly attributed to these shares in 2015 was actually a representation by the defendants that the shares had a market value of $100. This insistence that defendants represented an actual $100 value is strewn throughout their complaint and is the foundation of their arguments to this court. But there was no such representation. How do we know this? First, section 2.02 of the purchase agreement makes absolutely plain that the shares were issued at an agreed value of $100, and there is no reference anywhere in the purchase agreement to market value. And indeed, the whole point of the subscription agreement was to affirm this reality about this restricted stock, which by definition has no readily ascertainable market or sale value because it cannot be sold for an extended period of time. Indeed, as Judge Chang noted, the only reference in the purchase agreement to the actual value of the shares is used in contradistinction to the agreed value that's in section 8.06 concerning indemnification. Second, the purchase agreement and the subscription agreement have multiple detailed specific integration and non-reliance clauses that unambiguously confirm that the Arronis were not relying on anything outside the four corners of the transaction documents. Indeed, at section 3M of the subscription agreement, the Arronis expressly represented to the defendant that there were no representations whatsoever made by any person with respect to these preferred shares that were not contained in the subscription agreement. To plead their complaint, the Arronis actually have to breach their own representation to defendants. Now, their first count was over-recision, but was treated by Judge Chang as both a claim for breach of contract and for mutual mistake. There was no breach of contract here. The contract promised that the Arronis would receive $4.2 million in cash and 28,000 preferred shares issued at an agreed value of $100 each, and that was what was provided. Again, to quote Judge Chang, there is no objectively expressed text in the agreement to support that the parties ever intended for agreed value to be the equivalent of market value, quite the opposite. Second, there was no mutual mistake here. The mutual mistake claim also relies on the unsupported conflation of market value and agreed value. Mutual mistakes supports rescission only when both parties are mistaken on a basic assumption of the contract and that the party adversely affected did not assume the risk of the mistake. Judge Chang appropriately found that market value was never a basic assumption of this agreement, not mentioned anywhere in the agreement, and that the Arronis expressly assumed the risk that the market value of these shares would not equal that agreed value. Simply stated, a good or bad redemption value in 2018 says nothing about the accuracy of any previously agreed value attributed to these shares in 2015. Now, the Arronis disagree and make three primary arguments on appeal. First, they invoke basic canons of contract construction to argue the only logical reading of the purchase agreement is that the parties intended that the shares would have an actual value of $100, but this claimed intent is entirely inconsistent with multiple representations by the Arronis, that they understood the share value risk and the unreliability of projections, and were not relying on any such projections, estimates, or assumption as to the present or future value. They represented that they had enlisted all the professionals they needed, they had asked all the questions they wanted, and they had obtained all the information they felt was relevant to fully evaluate and be fully satisfied with their investment. They represented they understood the restricted nature of the nature of restricted stock, the extended time horizon it can impose on future sale, and the potential loss of all value, which they represented they could bear. But the Arronis now want to negate all of these representations, as Judge Chang noted, quote, the Arronis are now essentially seeking a retroactive guarantee of the cash value, cash equivalent of the purchase price, which is most certainly what not what defendants promised them. Canons of contract construction defeat these claims, they don't keep them alive. Second, the Arronis argue the progressive case is somehow an outlier and distinguishable here, and the integration language in the purchase agreement is insufficient to defeat these claims, but they entirely ignore and conveniently make no mention of the non-reliance representations the Arronis explicitly made in the subscription agreement, which is incorporated here. Delaware law is plain. Three weeks ago, the mid cap funding decision endorsed progressive, endorsed a series of cases, including Prairie Capital, Avery Partners, Cronenberg, HN Rexford, and confirmed quote, this court has determined a plaintiff's reliance is unreasonable such that it justifies dismissal of a mutual mistake claim. Whereas here the party's agreement contains anti-reliance and integration provisions. Third, the Arronis insist that this court must accept for 12 C purposes, their pleaded allegation of a deliberate misrepresentation by these defendants, but the law's claim exhibits Trump allegations and these exhibits are unambiguous. The very same analysis bars, the equitable fraud claim first sophisticated contractual parties who bargained at arm's length do not qualify for equitable fraud protection. That's the Doberstein case. Why? Because the relaxed scienter element requires then a fiduciary or special relationship that doesn't exist here, but more fundamentally, there was no misrepresentation here as judge Chang said, section 2.02 quote, simply lays out the agreement of both parties and is not a representation by either party to the other. Also, there can be no reliance here in HM Wexford, Delaware courts have consistently held that sophisticated parties to negotiated commercial contracts may not reasonably rely on information that they contractually agreed did not form a part of the basis for the their decision to contract. Ultimately, these plaintiffs elected to take some of their consideration as preferred shares precisely because those shares might later turn out to be worth something more than a hundred dollars per share. As judge Chang made clear, they could very well have chosen an alternative consideration structure, like all cash that would have done a better job of guaranteeing them the $7 million they hoped to earn from the sale. Instead, the Aronis chose to accept a fixed number of restricted shares that they knew would not be marketable for quite some time, precisely because of the potential upside of that uncertainty. At most, they made a poor prediction, not a mistake. They wanted to get in on CLA shares and did so, but when they bet on a value change and the value goes the wrong way, they have no more than the consequences of a bad bet, not a basis for rescission. Finally, if this court can be confident, if the shares have been redeemed for more than the attributed value, the Aronis would be pleased with their investment and not now complaining to this court that the original agreed value given to those shares was a mistake or a misrepresentation. Thank you. Thank you, Mr. Allison. Mr. Loftus, rebuttal. Yeah. Um, so it's not that the value of the shares changed at all. What's clearly pled is that in 2015, they were not what they were represented to be. Um, that's from 2015 till 2018, everything got better at the company. It should have gone up in value. This is not a heads. I win tails. You lose kind of question. Instead, it is a question that in 2015, everyone screwed out gravely in value in this company when the market valued the 2018, when it was sold, that's when the real value became clear. Um, it is grossly different that here, you know, it's, it's 80% less than what the party agreed the value was worth reportedly. Um, as far as the incorporation issues. So the Grable case just has a little application. Um, first there's nothing in the Grable case addressing the stake as to an incorporation provision and said, address mistake as to a pleadings issue. Um, and that's detailed on about page 17 of the case. Um, the other issue is with incorporation provision generally here, that everything we're pleading is based on what is in the agreement. The agreement says there was an agreed value of a hundred dollars a share. Um, so we aren't necessarily reaching beyond the agreement in order to prove the elements of the mistake claim and the rescission claim. Um, we can stay within the agreement for that. Um, what's really dangerous here is that this is a very nifty agreement. And if, if this works and you affirm this, I'm going to use this provision in every contract I draft. I mean, it's, it's great. And it's, it's dangerous because it's so slick. Um, and, and courts shouldn't be affirming, you know, these kinds of very slick worded, you know, this is, this is a probably a half million dollar agreement to draft and then they earned every penny because it is so slick. And what they do is rather than ascribing anyone to coming up with this value, they say we previously agreed to a value of the share and you just throw that in there. And so if you're in the process of negotiating this deal, you say, Hey guys, do you agree that it's a hundred dollars a share? Sure. Okay. And then you put it in there and like, you know, or you give them a reason you sell them on the a hundred dollars a share. Then you put it in there that we agreed to it previously, but then you also have an incorporation provision that says that anything we previously agreed to isn't included. Um, so you can take this reported agreement at the a hundred dollars a share and take it out of the contract and outside of any possible litigation. And you can lie, cheat and steal to get to that a hundred dollar value agreed to, and then carve it all out with this incorporation provision and the various representations. So, um, affirming this just creates a really miraculous drafting thing, the trick that we can all employ. Um, your time has expired. The case is taken under advisement.